Good morning and may it please the court. My name is Shelly Richter and I represent Petitioner Randy Stone. I'd like to reserve two minutes for rebuttal and I'll watch my clock. Mr. Stone is seeking an opportunity, a chance to show that his claims meet the requirements of the second or successive standard. This court should authorize Mr. Stone to proceed because he has made a sufficient showing of possible merit to warrant a further exploration in the district court. Today I'll address the two main prongs needed for authorization. First the factual predicate for this IAC claim was not previously available to the pro se indigent incarcerated Mr. Stone and second reasonable jurors would not have convicted Mr. Stone absent his counsel's errors. Turning to my first point, Mr. Stone litigated diligently in his prior federal proceeding but he could not have presented the vital facts of his current IAC claim because of circumstances beyond his control. A major factor was his indigence. He could not afford to hire an expert. Another factor was his incarceration. He could not secure funds to hire an expert or freely contact people. So what is your best case for the proposition that the failure of initial counsel to hire what you consider to be appropriate experts, not based on new facts, but constitutes satisfaction of B1, the factual predicate for the claim, could not have been discovered previously through the exercise of due diligence. It doesn't talk about could not have been presented. It says could not have been discovered. So what's your best case? The two cases are first from the Sixth Circuit recently is Ayers, A-Y-E-R-S, and that was a claim where the factual predicate could not have reasonably been discovered by the petitioner before the petitioner had counsel. And there she alleged an IAC claim. But petitioner had counsel here. Here petitioner had counsel for trial and for direct appeal. But petitioner didn't have counsel any time between direct appeal and now. And so trial counsel's failure to get an expert at trial does not reflect any lack of diligence for Mr. Stone. That trial counsel's IAC back then is actually imputed to the state. And so Mr. Stone could not have been any more diligent at trial when he was appointed counsel who's constitutionally required to be effective. But counsel is nevertheless not effective. And so the case where it's stated that that effectiveness is imputed to the state is the United States Supreme Court decision in Murray v. Carrier. Another case from this circuit that's relevant to your Honor's question is Hassan v. Galazzo. There the petitioner was alleging IAC for failing to investigate jury tampering. And for a while, all that the petitioner knew was that there were serious indications of jury tampering that his trial counsel didn't look into. But Mr. Hassan did not know the extent of the prejudice until later. And so this here there were no new facts. Right. The facts didn't change between the trial and when the two experts were retained. Right. The facts underlying the reports did not change. But Mr. Stone's ability to obtain an expert did change. Mr. Stone's ability to have an expert look at those facts and provide an opinion did change. And he had that ability when the case originally went to trial, but counsel didn't get the experts. Right. So the ability was there. It was counsel didn't get the experts. Yes. At trial, it was the fault of trial counsel who did not perform in the constitutionally required way. And again, that's not a failure of Mr. Stone's diligence. And so we look at what Mr. Stone could have done. Mr. What you're not arguing that every time someone gets an expert opinion later on, that that would always establish a factual predicate or is that your argument? No, it would not always. It would depend on the petitioner's particular circumstances and what that new expert opined. So what is it about these expert opinions that establish a factual predicate? Because I tend to agree with my colleague, Judge Bennett, that it doesn't seem that there are any new vital facts that arose out of these expert opinions that weren't already known at trial. The reason that these were previously not discoverable by Mr. Stone relates to his particular circumstances. And this court has said time and time again that the court should look at the particular circumstances of the petitioner when seeing what in due diligence they could have discovered. But that's about his indigency and I guess his circumstances. I'm talking about the expert opinions themselves. If they are relying on facts already known at trial and then they opine about them, how is that a factual predicate as opposed to just an expert opinion? Setting aside that, you know, maybe he couldn't have discovered these things beforehand, your argument seems to be that if someone's indigent and they come up with an expert opinion later on, that will always establish factual predicate. One instance where it wouldn't is where the basis of the expert opinion was well known and publicly available to a prisoner. So in a different case, that's not this, where the expert is essentially summarizing well-known information that was already available, that would be different. For example, issues with forensic bullet matching testimony, that's appeared in a 2016 report that's very available. This is quite different. This is analyzing the facts of the trial and applying a very particularized body of knowledge to that, that Mr. Stone could not have done just as a prisoner trying to figure this out on his own. So even if we move past that, there's still the issue here, the hurdle here of proving actual innocence. And it seems to me that the expert reports contain fairly qualifying language. So I mean, tell me, they seem fairly inconclusive. So tell me how they can support the notion that your client here is actually innocent. Yes, Ms. Wriston provides a report that is actually definitive, in my opinion. Of course, none of the experts can say conclusively whether this happened or it didn't happen. But her conclusion was that the lack of reported symptoms and the absence of abnormal physical findings on EC's medical examination are not consistent with the allegations related to digital penetration. What I'm looking at is, and I hope I have the right word here, Appendix 749. She says, for penetration to occur, the hymen and surrounding tissue would likely sustain lacerations. At Appendix 750, she says the attempt of successful penetration of the vagina has a high likelihood of resulting in injury. And then at 751, females in the study had evidence after delayed disclosure. But not all the variants are definitive, since only full transections are considered diagnostic. So, I mean, based on those parts of her opinion, it's hard for me to see how you come to be too, that no trier of fact could conclude that your client was guilty, especially given the Nevada Appellate Court's evaluation of the evidence here. So why don't those sort of waffling type statements, or, I mean, that's what experts do often. Why doesn't that basically mean you can't satisfy two little eyes of the statute? Well, in that case, if it's an issue of how far or how definitive she will be, that should be explored further in the district court. That's where she can testify and provide further information that would elucidate that. But if she's saying there's a high likelihood that if what EC said had happened, it would look this entirely differently, that is extremely strong evidence of innocence that does meet that standard of a sufficient showing of possible merit to warrant further exploration. Well, but possible merit doesn't get you there. It is the evidence as a whole would be sufficient to establish by clear convincing evidence that but for the constitutional error, no reasonable fact finder would have found the applicant guilty. And I just don't see what those caveats and even more caveats that I see in Dr. Donahue's expert report that you can, that you're meeting this. The possible merit language comes from this court's opinion in 2018, Henry v. Spearman. It's a very limited analysis that should take place at the authorization stage. That case explains that the court should exercise greater caution in denying authorization than in granting because that cannot be addressed later, whereas an inappropriate grant can be addressed later by the district court or on appeal. So that's where that language. But the opportunity to present us with your best case is yours. I mean, this is what we're looking at is your best case before any of your witnesses are cross-examined. And this is what the nurse is saying and Dr. Donahue is saying at Appendix 759, evaluations of child forensic interviews are not evaluations of the veracity of the information. This evaluation will make no statement about whether the alleged events did or did not occur. So you're giving us your best case and your best case doesn't seem to me to get there. These are issues of probabilities. No expert can come in and say definitively this didn't happen, but they can give us the probabilities that if this had happened, as EC alleged, it would look entirely differently. There would be reported symptoms of severe pain. There would be reported reports of bleeding. There would be reported medical findings. There would be significantly fewer inconsistencies. And these are all things that experts could tell us about that so far Mr. Stone has never had the opportunity to present to the federal court. Well, but even if Nurse Wriston had said definitively that digital penetration did not occur, you still have the problem that Mr. Stone was not convicted solely based on that. He was also convicted based on oral penetration. And so even if you take digital penetration off the table, there's still a basis to convict. So I don't think that Nurse Wriston's expert gets you to actual innocence. But the actual innocence, first it would go to the various counts that he was convicted on. So he was convicted on numerous digital penetration counts. So if he can show innocence of those, then the court should grant authorization and that would be sufficient. He doesn't need to show innocence of every single count he was convicted of. That said, if he shows innocence of digital penetration because what she said doesn't align with the medical evidence, that also casts significant doubt on the other counts that your honor referred to. So Mr. Stone doesn't need to prove innocence of everything. If he can prove innocence or make a sufficient showing to warrant authorization on the digital penetration counts, then the case should proceed. There are no further questions at this time. I'll reserve. Thank you. Good morning, your honors. May it please the court, Brooke Dorgeson on behalf of the respondents. Your honors, there are two issues that I would like to draw to the court's attention. First, that Stone does not present a new factual predicate that could not have been discovered previously through the exercise of due diligence. And second, even as this court finds this evidence to be new, Stone fails to demonstrate that no reasonable juror would convict him based on this new evidence. Stone concedes that claims two and three are not based on new evidence. In claim one, Stone asserts his trial counsel was ineffective for failing to call a psychologist and nurse with expertise in child sexual abuse at trial. He argues these reports constitute new evidence. Stone essentially concedes that the factual predicate was available through due diligence because he's claiming trial counsel was ineffective for failing to find it. The information must have been available through due diligence if trial counsel was ineffective for failing to present it. Further, these reports do not constitute new evidence because they are based on a factual predicate that was available during trial. The reports are simply different opinions from the opinions of experts who did testify at trial. Stone uses these reports to discredit EC's testimony over 20 years after she testified. I want to address the Ayers case that opposing counsel was just discussing. That's the Sixth Circuit? That's the Sixth Circuit. Respondents believe we should not adopt it in this circuit because that case was much different than this case. In that case, the expert opinion testimony that they found after the conclusion of trial completely exonerated the defendant in that case. That's not what's happening here. It's just different expert testimony that differs from the opinions of the experts at trial. So just to be clear, we don't have to reject the Ayers case. We just have to say it's not applicable to this. It's not the same factual scenario. Yes, Your Honor. We don't think it applies here. You would agree that there are hypothetical situations where the discovery of new facts could lead to the necessity of the retention of new experts that could not possibly have been known at the time of a trial or even the first petition, for example, because the predicate for retaining the experts would have been the new unknown and unknowable facts. You're not arguing that in that kind of a case, it's the same rule, right? Yes, Your Honor. If there are no further questions on the first factor, I'll turn to the second factor. Turning to my second issue, even if this court does find that the factual predicate was not available, Stone fails to demonstrate that no reasonable juror would convict him even if this alleged new evidence was presented. The reports would not have changed the outcome of the trial because the information was either known at trial or simply just contradicts the expert opinions. Nurse Wriston reports largely focuses on the fact that EC would have had injuries if these allegations did occur. Her report found that EC was in Tanner Stage 1 and not estrogenized. However, Nurse Souter, who actually examined EC, found she was more mature in Tanner Stage 2 and was estrogenized. Thus, her finding that EC's hymen would likely be damaged because she was not estrogenized is not reliable compared to Nurse Souter's testimony that she was estrogenized and any lacerations would have healed within the two weeks from the last abuse to the examination. Further, there is no need for Nurse Souter to thoroughly examine EC's hymen as Nurse Wriston suggests. Because as Nurse Souter testified at trial, Stone may not have fully penetrated EC's vagina. Although EC testified that Stone digitally penetrated her up to one knuckle, Nurse Souter testified that many times digital penetration with children comes on top of the genital area rather than inside the vaginal canal. And is Nevada law similar to other places where any amount of penetration is sufficient to establish the offense? Any intrusion, however slight. Yes, Your Honor. She was nine when the abuse began and 12 when it ended. So it's possible there was no digital penetration inside the vaginal canal that would have damaged the hymen, even though EC's testified that there was. On to Psychologist O'Donohue's report, he largely just points out inconsistencies in EC's testimony. The jury heard the many inconsistencies. Defense counsel thoroughly impeached her and they also had all the transcripts of her previous testimonies to compare to her testimony at trial. Nevertheless, the jury still found him guilty. Further, O'Donohue focused on the interviewer's techniques being an issue. O'Donohue admits in his report that he holds different views about forensic interviews than those currently held in the field. So this does not prove that the techniques were so insufficient to prove him innocent. This evidence would not have led the jury to find Stone not guilty because the jury had access to those transcripts and still found him guilty. As I understand it, Mr. O'Donohue's report essentially concluded that these factors could have led to bias in the child, but he was not opining on any of the truth or non-truth of what she said. Yes, Your Honor, that is true. It's just differing expert opinions and if we were to allow this and allow petitioners to go back 20 years later, find a different expert opinion, present it to this court and say, hey, I need another go at this because this different opinion proves me innocent, we would be inundated with cases applying for a second or successive petition. If there are no further questions, we ask that this court deny the application. Thank you. Thank you. Thank you.  Just a few brief points on rebuttal. The first is that Ms. Jorgensen talks about different issues that she believes there might be with the expert reports, but at this stage, the court is to assume that Mr. Stone can prove what is in those reports. So the standard looks at whether these facts, if proven, show clear and convincing evidence of innocence. So those issues of potential vulnerabilities for later are not an issue at this stage. She also expressed that there was a lack of due diligence because this was available to trial counsel. These facts were available to trial counsel and we agree they were available to trial counsel. That's why trial counsel was ineffective. The problem was that these vital facts showing prejudice and showing trial counsel's deficient performance were not available to Mr. Stone. These were well beyond what he could do and what he could provide to the district court in habeas. Let me see what else. And I would like to point out this court's observation in Alcox that a petitioner's specific circumstances, including his incarcerated status and his lack of resources, are all factors relevant to the due diligence inquiry. And they are relevant here. Mr. Stone could not have presented the vital facts of his current IAC claim, including both subclaims in his prior proceeding. If there are no further questions, I'll submit. All right. We thank both counsel for their arguments and the case just argued is submitted. With that, we'll move to.
judges: BENNETT, SANCHEZ, THOMAS